UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| **CAROLYN JOHNSON** | **CIVIL ACTION NO. 09-0691** |
| **VERSUS** | **JUDGE ROBERT G. JAMES** |
| **LOUISIANA STATE UNIVERSITY HEALTH SCIENCE CENTER, HEALTH CARE SERVICES DIVISION, E.A. CONWAY MEDICAL CENTER** | **MAG. JUDGE KAREN L. HAYES** |

RULING

Pending before the Court is a Motion for Summary Judgment [Doc. Nos. 25 & 29[1]] filed by Defendant the Board of Supervisors of Louisiana State University and Agricultural and Mechanical College ("the Board of Supervisors"), improperly named as Defendant Louisiana State University Health Science Center, Health Care Services Division, E.A. Conway Medical Center ("LSUHSC-S/EAC"). The Board of Supervisors seeks summary judgment on Plaintiff Carolyn Johnson's ("Johnson") claims of federal and state disability discrimination under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, and Louisiana Revised Statute 23:322, *et seq*. Johnson opposes the Board of Supervisor's motion [Doc. No. 33].

For the following reasons, the Board of Supervisor's Motion for Summary Judgment is GRANTED, and Johnson's claims are DISMISSED WITH PREJUDICE.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

This case arises out of the Board of Supervisors' termination of Johnson's employment at

---

[1]The Motion for Summary Judgment [Doc. No. 25] was filed on May 13, 2011, but on May 18, 2011, with leave of Court, Defendant filed an Amended Memorandum in Support of Motion for Summary Judgment [Doc. No. 29].

LSUHSC-S/EAC.

Johnson was employed as a Central Service Worker 2 and was a classified State Civil Service worker with permanent status. In her position, Johnson was required to sterilize hospital equipment, open sterilizer doors, and lift heavy trays of equipment.

During Johnson's employment, LSUHSC-S/EAC maintained an Employee Handbook, which contained its Time, Attendance, and Leave Policy. Johnson acknowledged her receipt of the Employee Handbook on November 24, 2003. Following Johnson's receipt of the Employee Handbook, the Policy was revised four times: on April 6, 2005; October 27, 2005; March 28, 2006; and April 3, 2006.

On October 20, 2005, then-Central Supply Supervisor Russell Vallotton ("Vallotton") sent a memo to all Central Service employees, informing them of the hospital's call-in procedures.

Beginning in December 2005, Johnson was placed under the care of a physician for carpel tunnel syndrome ("CTS").

On December 6, 2005, Vallotton issued a written reprimand to Johnson for failing to follow the call-in procedure. Johnson signed the reprimand.

In the early part of April 2006, on the instructions of her physician, Johnson began wearing hand splints because of her CTS.

Some time around April 10, 2006, Vallotton provided a memo to Johnson in which he again reprimanded her for failing to follow the call-in procedure.

On or about April 25, 2006, Vallotton raised a concern to Johnson, for the first time, that the hand splints might contaminate or compromise the sterile environment in which she worked. He advised her to obtain a medical certification that she needed to wear the splints.

The following day, April 26, 2006, Linda Lochbrunner ("Lochbrunner"), the Director of Budget and Finance at the hospital, sent a letter to Johnson with an attached medical certification, advising her to return the completed certification by May 5, 2006.

On May 3, 2006, Johnson returned to work with a medical certification dated May 2, 2006, which stated that she could return to work, but that she had to wear hand splints "always." The certification did not list any other restrictions. Johnson began wearing surgical gloves over her splints to maintain the sterile environment.

On May 4, 2006, two of Johnson's co-workers, Oletha Jones and Sharon Douzart, complained to Vallotton[2] that they were performing Johnson's job duties because she could not open the sterilizer doors or lift the heavy trays.

On May 5, 2006, Vallotton met with Johnson and asked her why she was not performing her job duties. She informed him that she had restrictions from her doctor and that it hurt for her to open the sterilizer doors and lift the trays. However, when Vallotton asked her where the restrictions were noted, she referred to her May 2, 2006 medical certification, which did not list any restrictions.

As a result of their conversation, Vallotton was unsure what, if any, restrictions Johnson had. Vallotton emailed Lochbrunner and asked for advice. Vallotton later told Johnson that he would need medical documentation of her purported restrictions and referred her to the Human Resources office.

On the same day, May 5, 2006, a letter signed by Assistant Human Resources Director Jim

---

[2] In May and June of 2006, Johnson's direct supervisor was Rickey Pickett, who had recently obtained the position of Central Supply Supervisor. However, while Pickett was being trained for his new position, Vallotton, who had been promoted from Central Supply Supervisor to Distribution Supervisor, continued to supervise Johnson.

3

Hardegree ("Hardegree") was hand-delivered to Johnson and notified her that she was being placed on provisional medical leave under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2612,[3] until it could be verified that she qualified for FMLA leave. The letter further stated that any sick leave used by Johnson from this date forward would apply to any FMLA leave to which she was entitled and that if she wished to use annual leave, she could request to do so. The Board of Supervisors contends that FMLA forms were attached to the letter and that Johnson was aware that she had to return the forms in fifteen (15) days. Although Johnson admits that she received the letter (which she signed), she denies that she received the forms. Hardegree's letter did not state that Johnson had to return the FMLA forms within fifteen (15) days.

Before leaving work that day, Johnson advised Vallotton that she was told to go to the doctor. Vallotton told her that she would need to "[d]o what they told her to do." Johnson then left work. The Human Resources office advised Vallotton that Johnson would not return to work until her FMLA paperwork had been completed.

Johnson contends that she called Vallotton several times from a pay telephone in an attempt to discuss her returning to work.

On May 8, 2006, Vallotton completed Johnson's annual performance review ("PPR") and mailed it to her home address with directions for her to review the PPR, sign and date it, and return

---

[3]The FMLA permits an eligible employee to take a total of twelve (12) weeks of leave "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). In general, "[a]n eligible employee may elect, or an employer may require the employee, to substitute any of the accrued paid vacation leave, personal leave, or medical or sick leave of the employee for leave provided under subparagraph . . . (D) of subsection (a)(1) . . . for any part of the 12-week period . . . except that nothing in this subchapter shall require an employer to provide paid sick leave or paid medical leave in any situation in which such employer would not normally provide any such paid leave. . . ." 29 U.S.C. § 2612(d)(2)(B).

it.

On May 9, 2006, Vallotton saw Johnson at the E.A. Conway Outpatient Medical Clinic. At that time, he contends that he reminded her to complete the FMLA paperwork and to return the PPR. After his conversation with Johnson, Vallotton emailed Hardegree and Lochbrunner, advising them that he had reminded Johnson to return the FMLA paperwork and PPR.

On May 15, 2006, Vallotton emailed Lochbrunner advising that he had not heard from Johnson and that she had exhausted her sick leave. Although Johnson had annual leave available, Vallotton had no signed authorization to use her annual leave for her absences.

Vallotton later received the PPR, which had been signed and dated by Johnson on June 19, 2006.

On May 30, 2006, Aryon McGuire ("McGuire"), Administrator for LSUHSC-S/EAC, sent a letter to Johnson notifying her that she was being considered for termination based on her "failure to adhere to the hospital's Time, Attendance, and Leave Policy, thereby resulting in *Job Abandonment*." [Doc. No. 25, Exh. A1, attached to Affidavit of Aryon McGuire]. McGuire's letter stated that Johnson had not "returned to work" since May 5, 2006, had not "made any contact with [her] Supervisor, Department Manager, or the Human Resources Department," and had "not provided any medical certification, signed by a physician, in accordance with the hospital's Time, Attendance, and Leave Policy and Mr. Hardegree's letter of May 5 to explain your continued absence from work." [Doc. No. 25, Exh. A1, attached to Affidavit of Aryon McGuire]. McGuire instructed Johnson to respond in writing or by contacting his office to make an appointment within five (5) days of her receipt of the letter. Johnson alleges that she again called Vallotton about returning to work.

On June 13, 2006, McGuire sent another letter to Johnson stating that she had not responded to his previous letter and informing her that she would be terminated effective June 21, 2006.

On June 21, 2006, Johnson was terminated. Following her termination, Johnson filed an appeal with the state Civil Service Commission ("CSC").

On October 19, 2006, Johnson timely filed a charge of disability discrimination with the Equal Employment Opportunity Commission ("EEOC").

On January 24, 2007, the CSC upheld Johnson's termination.

On May 1, 2007, while her EEOC charge was pending, Johnson filed suit against the Board of Supervisors in the Fourth Judicial District Court, Parish of Ouachita, State of Louisiana, Case Number 07-1540. In that lawsuit, Johnson alleged that she had been terminated for job abandonment in retaliation for asserting a workers' compensation claim. The district court granted the defendant's exception for lack of subject matter jurisdiction and dismissed Johnson's claims. On appeal, the Second Circuit Court of Appeals affirmed the decision of the district court. *Johnson v. Bd. of Supervisors of La. State Univ. & Agr. & Mechan. College*, 32 So.3d 1041 (La. App. 2 Cir. 2010).

On January 29, 2009, the EEOC issued a cause determination and a notice of right to sue to Johnson. The EEOC concluded that "it is more likely than not that Respondent violated the [ADA] when respondent regarded [Johnson] as an individual with a disability by forcing her on leave, when Respondent was aware of her wearing medical splints, and forcing her on FMLA when two co-workers complained about her; thus, resulting in her discharge on June 21, 2006." [Doc. No. 33, Exh. A].

On April 27, 2009, within ninety days of her receipt of the EEOC right-to-sue letter, Johnson filed her lawsuit in this Court. Johnson asserts state and federal claims of disability discrimination

6

and seeks compensatory damages for loss of past wages and benefits, loss of future wages and benefits, humiliation, and emotional pain and suffering and punitive damages. Johnson contends that the Board of Supervisors violated the ADA and state disability discrimination law because she was regarded as an individual with a disability when she was forced to take FMLA leave after two co-workers complained, ultimately resulting in her termination.

On April 19, 2010, this Court granted Johnson's Unopposed Voluntary Motion to Dismiss the individual Defendant, Vallotton.

On May 13, 2011, the Board of Supervisors filed the pending Motion for Summary Judgment [Doc. Nos. 25 & 29]. On July 13, 2011, after having received an extension of time from the Court, Johnson timely filed a memorandum in opposition [Doc. No. 33] to the Motion for Summary Judgment.

The Court is now prepared to rule.

## II.   LAW AND ANALYSIS

### A.   Summary Judgment

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact. *Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir. 1992). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the

nonmoving party. *Id.*

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994). The nonmoving party must show more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In evaluating the evidence tendered by the parties, the Court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255.

### B. Failure to Exhaust Civil Service Remedies

The Board of Supervisors argues that Johnson's "failure to exhaust and/or abandonment of her civil service remedies should bar/preclude her from recovery under her disability discrimination claims pursuant to Louisiana's employment discrimination laws and perhaps federal law." [Doc. No. 29, p. 12].

With regard to Johnson's ADA claim, the United States Fifth Circuit addressed this issue in the context of a civil rights action in *Chisley v. Richland Parish School Board*, 448 F.2d 1251 (5th Cir. 1971). The Fifth Circuit held that the "exhaustion of either state judicial or administrative remedies is not a prerequisite to the invocation of federal relief under the Civil Rights Act of 1871, 42 U.S.C. § 1983, since the cause of action established by that statute is fully supplementary to any remedy, adequate or inadequate, that might exist under state law." *Id.* at 1252. Although *Chisley* involved § 1983 claims, the case is analogous. Further, the ADA itself clearly provides that a plaintiff's duty of exhaustion is satisfied by timely filing a charge of discrimination with the EEOC. *See* 42 U.S.C. § 2000e-5(b),(e),(f); 42 U.S.C. § 12117. There is no additional requirement that a

state civil service employee also exhaust her remedies before the CSC. Therefore, the Board of Supervisors' Motion for Summary Judgment on Johnson's ADA claim on the basis of preclusion is DENIED.

With regard to the Board of Supervisor's argument that Johnson's state law claims of disability discrimination are precluded, the Court is " bound to apply [Louisiana] law as interpreted by the state's highest court." *Barfield v. Madison Cnty., Miss.*, 212 F.3d 269, 271-72 (5th Cir. 2000). The Louisiana Supreme Court has never ruled on whether a civil service employee must exhaust her remedies before the CSC and obtain a determination that she has been wrongfully terminated before she can pursue a claim of discriminatory discharge in state court. Therefore, the Court must make an "Erie guess" as to how the Louisiana Supreme Court would rule upon the issue based on (1) decisions of the Louisiana Supreme Court in analogous cases, (2) the rationales and analyses underlying Louisiana Supreme Court decisions on related issues, (3) dicta by the Louisiana Supreme Court, (4) lower state court decisions, (5) the general rule on the question, (6) the rulings of courts of other states to which Louisiana courts look when formulating substantive law and (7) other available sources, such as treatises and legal commentaries. *See Hodges v. Mack Trucks, Inc.*, 474 F.3d 188, 199 (5th Cir. 2006) (citations omitted).

In this case, the Court finds little guidance in Louisiana Supreme Court decisions. However, the Court does find guidance in the appellate courts.

Prior to filing this lawsuit, Johnson brought suit in state court against the Board of Supervisors, alleging that she was discharged in retaliation for asserting a worker's compensation claim. The district court dismissed Johnson's case for lack of subject matter jurisdiction. On appeal, the Second Circuit Court of Appeals affirmed the district court. *Johnson v. Bd. of Supervisors of La.*

9

*State Univ. & Agr. & Mechan. College*, 32 So.3d 1041 (La. App. 2 Cir. 2010).

In its analysis, the Second Circuit first noted that, under Article 10 of the Louisiana Constitution, the CSC has been vested with exclusive jurisdiction to hear and decide all removal and disciplinary lawsuits involving civil service employees. *Id.* at 1045. "The thrust of the grant of exclusive jurisdiction over employment-related disputes between employers and employees in civil service is to preclude the district court from having concurrent jurisdiction with the CSC over such disputes." *Id.* at 1046 (citations omitted). The "provisions delegating jurisdiction to the CSC over removal and disciplinary actions are to be narrowly construed. . . . For instance, the CSC has no subject matter jurisdiction over tort cases and cannot award general monetary damages." *Id.* On the other hand, "the CSC's exclusive jurisdiction to hear and decide removal and disciplinary cases cannot be circumvented or defeated by styling a removal or disciplinary matter as a tort suit." *Id.* (citations omitted). After reviewing relevant decisions of other appellate courts, the Second Circuit reconciled the authorities by concluding:

> A claim for damages based on the alleged wrongful removal of a civil service employee cannot be asserted in district court without first successfully appealing the removal before the CSC. Johnson's appeal before the CSC was not successful, and she abandoned the civil service remedies available to her by failing to timely appeal the referee's ruling. As a result, the CSC's ruling is a final judgment on the legality of her removal by E.A. Conway for job abandonment. Johnson cannot now avoid the CSC's adverse ruling and circumvent the exclusive jurisdiction of the CSC to review and decide her removal case by alleging in district court a different ground for her removal, namely retaliatory discharge for filing a worker's compensation claim. Notably and inexplicably, Johnson failed to raise this defense before the CSC even though she was represented by counsel. While we are sympathetic to Ms. Johnson's situation, she had the opportunity to appeal her removal before the CSC as provided by La. Const. Art. 10, § 12. Unfortunately for her, the appeal was not successful. It having been determined by the CSC that her removal was proper, the district court lacks jurisdiction to review her removal so as to award damages under La. R.S. 23:1361.

*Id.* at 1049-50.

In reaching this determination, the Second Circuit noted with approval the decision of the Fourth Circuit Court of Appeals in *Williams v. Orleans Levee Dist.*, 24 So.3d 307 (La. App. 4 Cir. 2009). *Id.* at 1048 n. 3. In that case, Williams appealed his termination to the CSC, but during the pendency of that proceeding also filed suit in district court alleging the torts of defamation, false imprisonment, and intentional infliction of emotional distress and additional claims of racial discrimination, discriminatory employment practices, civil rights violations, and whistleblower protection. After the CSC issued a final decision upholding Williams' termination as lawful, his former employer filed an exception of res judicata in the district court suit. The trial court denied the exception as to the tort claims but granted the exception as to the remaining claims. On appeal, the Fourth Circuit affirmed the district court because Williams' termination was the central issue in these four claims, and his claims had been reviewed and rejected by the CSC. According to the Second Circuit, "[t]he opinion makes clear that the authority to review the reasons for a civil service employee's termination and determine whether it was lawful is unambiguously assigned to the CSC pursuant to its exclusive jurisdiction over removal matters." *Id.* Comparing Williams' claims to Johnson's, the Second Circuit stated: "Here, too, the basis for her termination is the central issue in Johnson's retaliatory discharge suit. This issue concerning the reason for Johnson's removal by E.A. Conway is one over which the CSC has been granted exclusive power and authority to hear and decide." *Id.*

As the Second Circuit noted in the *Johnson* opinion, only one circuit court decision stands "alone in its interpretation of the judicial authority granted the CSC." *Id.* at 1048. In *McCain v. City of Lafayette*, 741 So.2d 720 (La. App. 3d Cir. 1999), McCain's employment with the City was

11

terminated. He first unsuccessfully appealed to the city's civil service board. Then he filed suit in state district court alleging age discrimination. Ruling in favor of the city, the trial court determined that McCain could not for the first time raise his age discrimination claim in district court when the city civil service board had exclusive original subject matter jurisdiction over all removal and disciplinary cases.

On appeal, the Third Circuit recognized that McCain's termination or removal was at issue in his age discrimination suit and that the civil service board should have been able to determine whether age discrimination was the cause of a wrongful removal, but also recognized that the civil service board could not award damages. Expressing concern that a claim for damages might prescribe if a claimant was first required to appeal his removal to the civil service board and then seek further review of an adverse decision before filing a tort suit, the Third Circuit concluded that the civil service board does not have exclusive jurisdiction over cases wherein it has no power to grant the remedy sought, such as tort damages.

After considering all these decisions, the Court believes that, if faced with the question, the Louisiana Supreme Court would find that Johnson is precluded from pursuing her state law disability discrimination claims when she failed to raise that issue to the CSC as the basis of her alleged improper removal. Although the CSC does not have the authority to award damages, its jurisdiction is not conditioned upon that authority. If Johnson had obtained a favorable determination on her claim of improper removal, she could have pursued a claim for damages in state court. Accordingly, the Board of Supervisors' Motion for Summary Judgment on Johnson's state law claims is GRANTED, and those claims are DISMISSED WITH PREJUDICE.

### C.   ADA Claim

The Board of Supervisors moves this Court for summary judgment on Johnson's ADA claim, arguing that she cannot establish that she had an impairment that substantially limited a major life activity, she was not qualified for her position, she failed to request a reasonable accommodation, and that it did not discriminate against her on the basis of disability.

As the Board of Supervisors points out, although significant changes were made to the ADA in 2008, the amendments are not retroactive, so the Court analyzes Johnson's claims under the law prior to 2008.  *See EEOC v. Agro Distrib., L.L.C.*, 555 F.3d 462, 469 n.8 (5th Cir. 2009) ("Congress recently enacted the ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553 (2008), but those changes do not apply retroactively.") (citation omitted).  Then, as now, the ADA prohibits discrimination against a qualified individual because of a disability "in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a) (Westlaw 2006).

A person is disabled under the ADA if she "(A) [has] a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) [has] a record of such an impairment; or (C) [has been] regarded as having such an impairment." 42 U.S.C. § 12102(2) (Westlaw 2006) (definition of disability).

In this case, while Johnson "asserts a cause of action for discrimination in employment on the basis of disability, pursuant to both federal and Louisiana law," it is clear from her Complaint that Johnson proceeds only under subsection (C), contending that the Board of Supervisors "violated the [ADA], in that [it] **regarded [her]** as an individual with a disability by forcing her on leave,

13

when [it] was aware of her wearing medical splints, and forcing her on FMLA when two co-workers complained about her, thus resulting in her discharge of June 21, 2006." [Doc. No. 1, ¶¶ 6, 23 (emphasis added)].

To be "regarded as" disabled under the ADA, Johnson must have had (1) "an impairment which is not substantially limiting but which the employer perceives as . . . substantially limiting"; (2) "an impairment which is substantially limiting only because of the attitudes of others toward such an impairment"; or (3) "no impairment at all but is regarded by the employer as having a substantially limiting impairment." *Rodriguez v. ConAgra Grocery Prods. Co.*, 436 F.3d 468, 475 (5th Cir. 2006) (internal citation omitted); *see also* 29 C.F.R. § 1630.2(l) (Westlaw 2006) (A person is "regarded as" having an impairment if she "[h]as none of the impairments . . . but is treated by a covered entity as having a substantially limiting impairment.").

Since Johnson does not contend that she has an "actual" disability, the Board of Supervisor's arguments that she is not substantially limited in a major life activity, that she was not a qualified individual with a disability, and that she failed to request a reasonable accommodation are inapplicable. The Board of Supervisors's argument that it did not discriminate against Johnson, but, in fact, terminated her because of her "job abandonment" is a proper defense to Johnson's regarded-as ADA claim. However, that determination will turn, at least in part, on credibility since Johnson denies that the Human Resources Department provided her with the FMLA forms, denies that she was told to return the FMLA forms in fifteen (15) days, and contends that she called Vallotton several times about returning to work. Given the credibility issues and the additional finding of

cause by the EEOC,[4] the Court finds there is a genuine issue of material fact for trial on Johnson's ADA claim. Under these circumstances, the Board of Supervisors' Motion for Summary Judgment on Johnson's ADA claim is DENIED.

### III. CONCLUSION

For the foregoing reasons, the Board of Supervisors' Motion for Summary Judgment [Doc. Nos. 25 & 29] is GRANTED IN PART and DENIED IN PART. The motion is GRANTED as to Johnson's state law claim of disability discrimination, but the motion is DENIED as to Johnson's ADA claim.

MONROE, LOUISIANA, this 26th day of July, 2011.

*(signature)*
ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE

---

[4] The Board of Supervisors did not file a reply memorandum contesting the admissibility of the EEOC cause determination.